IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FILED
August 18, 2006

CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| DON VENABLE, CHB, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 3:05-cv-1479-R |
| | § | |
| PAUL RIMMER and | § | |
| HAROLD WOODWARD, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Plaintiff Don Venable has sued defendants Paul Rimmer and Harold Woodward to remedy what he alleges to be unconstitutional practices and procedures used to assess customs duties at the Customs and Border Protection Division of the U.S. Department of Homeland Security. Defendants have moved to dismiss all claims and, in the alternative, have moved for summary judgment. That motion is now before the Court. (Dkt. No. 7). For the reasons stated below, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's claims against Defendants for lack of subject matter jurisdiction. An order of dismissal will follow by separate order.

### I. BACKGROUND

Don Venable is a Dallas-area customs broker who conducts a customs brokerage business under the same name. Defendant Paul Rimmer is the Dallas-Fort Worth Area Port Director for the United States Bureau of Customs and Border Protection ("CBP"). Defendant Harold Woodward is the CBP's Houston Area Port Director.

Venable has filed this *pro se* lawsuit to challenge the manner by which the CBP assesses liquidated damage penalties. In his complaint, Venable alleges that several unexpected penalties

1

have been levied against his clients, which, he claims, have caused him economic harm and emotional distress. He claims that he has had to spend an inordinate amount of time challenging penalties on behalf of his clients and mending his relationships with them. (See First Am. Compl. at 3).

Venable's principal complaint is that "CBP personnel under the supervision and control of the Defendants... either have no procedure or a constitutionally insufficient procedure for adequately investigating" whether a "penalty" – i.e., a liquidated damages penalty under 19 C.F.R. §172.1 – should issue. (*See* First. Am. Compl. at 1 & n.2). Venable argues that the CBP currently does not conduct a constitutionally "adequate" investigation into whether a liquidated damages penalty should issue in a particular case because CBP personnel routinely fail to discover and consider facts which would negate or mitigate the penalty, even though such information is readily available to them. (*See id*. at 3, 4). For that reason, he asserts that the CBP's method of assessing liquidated damage penalties against his clients have unconstitutionally deprived him of "liberty and property" without due process of law and constitute an unconstitutional "taking" of property without just compensation.

As relief, Venable requests declaratory and injunctive relief to remedy these alleged constitutional violations. Venable also seeks a stay of all pending administrative proceedings involving his clients and a writ of mandamus against Defendants so that they may devise "local ministerial policies and procedures... [to be] put into practice at each of the respective customs districts" to ensure a "constitutionally adequate prior investigation" occurs before liquidated damage penalty notices are issued for failure to timely pay customs duties or file entry documentation. (*See id*. at 4).

## II. ANALYSIS

Defendants have moved to dismiss Venable's lawsuit on several grounds, including lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. (*See* Def.'s Mot. Br. at 1). When a motion to dismiss for lack of subject matter jurisdiction is filed "in conjunction with other Rule 12 motions," the Fifth Circuit has held that "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam)). This prevents the situation in which a court without jurisdiction prematurely dismisses a case with prejudice. *Ramming*, 281 F.3d at 161 (citing same). As relevant background, the Court will first describe the regulatory framework that Venable has challenged before proceeding to the merits of Defendants' motions to dismiss.

### A. Statutory and Regulatory Background

Customs brokers are licensed, regulated and empowered by the U.S. Customs and Border Protection (CBP) to assist importers and exporters in meeting Federal requirements governing imports and exports. U.S. Customs and Border Protection, *Becoming a Customs Broker*, at http://www.customs.treas.gov/xp/cgov/import/broker_management/brokers.xml (last visited August 14, 2006). Brokers submit necessary information and appropriate payments to the CBP on behalf of their clients and charge them a fee for this service. *Id.*

When commercial merchandise arrives in the United States, it ordinarily remains in the custody of the CBP until the importer, consignee, or their authorized agent establishes ownership of the merchandise and complies with all relevant laws and regulations, including the payment of customs duties and tarriffs. *See generally*, Revisions to Customs Bond Structure, 49 Fed. Reg.

3

41,152 (October 19, 1984); *see also*, 19 C.F.R. §§141-172.   An "entry" occurs when the items are released to the importer.

Section 142 of Part 19 of the Code of Federal Regulations governs the entry process.  *See* 19 C.F.R. §142.  In some instances, the CBP requires that an importer and a surety execute an importation bond as a precondition to releasing the merchandise from the agency's custody.  *See* 19 U.S.C. §1623; 19 C.F.R. §142.4. The bond requirement is intended to promote compliance with several administrative requirements, including the timely entry of documentation; the payment of estimated duties when due; the payment of any additional duties and taxes subsequently found to be due; and the timely redelivery of merchandise to the CBP's custody if it is found not to comply with applicable laws and regulations, including those requiring that the merchandise be properly marked, labeled, cleaned, fumigated, destroyed, or exported.  *See* 19 U.S.C. §1623.  In the event that merchandise is not timely redelivered to the custody of the Customs Service (CBP), liquidated damages are assessed against the importer or his or her surety.  A "liquidation" is "the final computation or ascertainment of the duties... or drawback accruing on an entry."  19 C.F.R. §159.1.

  B.    **Legal Standards**

    1.    **Rule 12(b)(1) Standard**

Defendants have moved to dismiss the lawsuit for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Federal courts are courts of limited jurisdiction; therefore, they have the power to adjudicate claims only when jurisdiction is conferred by statute or the Constitution.  *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir.1998). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional

power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

In ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may evaluate the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac V.O.F.*, 241 F.3d 420, 424 (5th Cir. 2001), *cert. denied*, 534 U.S. 1127 (2002) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). A court must take the facts as true and resolve inferences and doubts in the plaintiff's favor. *In re Supreme Beef Processors, Inc.*, 391 F.3d 629, 633 (5th Cir. 2004).

### 2. Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) is disfavored in the law and rarely granted. *See Thompson v. Goetzmann* 337 F.3d 489, 495 (5th Cir. 2003). When ruling on a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-movant. *See Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). The complaint will only be dismissed if it appears beyond doubt that the claimant can prove no set of facts in support of its claim that would entitle him or her to relief. *See Campbell*, 43 F.3d at 975; *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994). The relevant question is not whether the claimant will prevail but whether it is entitled to offer evidence to support its claims. *See Cross Timbers Concerned Citizens v. Saginaw*, 991 F.Supp. 563, 571 (N.D.Tex. 1997).

### C. Disposition

#### 1. Venable does not have standing to seek a stay of his clients' administrative cases or to litigate any claims on their behalf

5

The standing doctrine in federal courts is based upon the "case or controversy" requirement of Article III of the United States Constitution and other prudential concerns. *See Federal Election Comm'n v. Akins*, 524 U.S. 11, 19-20 (1998); *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To have Article III standing, a plaintiff must show "(1) that [he or she] ha[s] suffered an 'injury in fact– an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent'; (2) that there is 'a causal connection between the injury and the conduct complained of'; and (3) that the injury is likely to be redressed by a favorable decision." *Hosein v. Gonzales*, 452 F.3d 401, 403-04 (5th Cir. 2006) (quoting *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001)).

Venable's lawsuit attempts to challenge the constitutionality of the CBP's procedures on behalf of his clients. Ordinarily, one does not have standing to assert a violation of rights belonging to another, since the person entitled to a right is the only one who can be directly injured by its deprivation. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). An exception to this general rule is when a party has made a sufficient showing of third party standing. To properly invoke the third party standing doctrine, a litigant must have (1) suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute; (2) the litigant must have a close relation to the third party; and (3) there must exist some hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). Even if Venable were able to meet the first two requirements of the third party standing doctrine, he has not shown that his clients are hindered from protecting their own interests. For that reason, he does not have standing to assert any claims on their behalf or to request a stay of their administrative proceedings.

Moreover, assuming the truth of the allegations in the complaint, Venable, as a customs

broker, has not shown sufficient "injury in fact" to complain of liquidated damage penalties assessed against his clients under the CBP's regulatory scheme. The agency's penalties are only assessed against importers themselves (or their sureties) and not the customs brokers that they employ. For that reason, Venable is not exposed to personal liability for any liquidated damages penalties that would be assessed against his clients and, therefore, does not have a sufficient personal stake in the outcome of this controversy to have standing to bring this suit.

>    **2.   To the extent that Venable seeks to redress injury to his business reputation, he has not stated a claim under the due process clause or the takings clause.**

To the extent that he seeks redress for damage to his professional reputation resulting from the unexpected assessment of penalties, Venable does not state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). Mere injury to reputation, even if financial harm results therefrom, is not actionable as a deprivation of property or liberty under the Fifth Amendment. *See Paul v. Davis*, 424 U.S. 693, 712 (1976); *Van der Zee v. Reno*, 73 F.3d 1365, 1369 (5th Cir.1996); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) ("[A]n interest in reputation alone does not implicate a 'liberty' or 'property' interest sufficient to invoke due process protection."). The Supreme Court has held that an individual suffers a deprivation of liberty by virtue of injury to reputation only when the governments operates "to bestow a badge of disloyalty or infamy" that forecloses all other employment opportunities. *See Paul*, 424 U.S. at 705. Because Venable cannot show that his alleged injury to business reputation effectively precludes him from any further employment, he has not stated a claim upon which relief may be granted. *See, e.g., Connick*, 15 F.3d at 1343; *Sturm v. Clark*, 835 F.2d 1009, 1013 (3d Cir.1987) (defamatory statement resulting in loss of business clients and income insufficient).

### 3. Venable is not entitled to mandamus relief.

The federal mandamus statute, 28 U.S.C. §1361, states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.* To state a claim for mandamus relief, a plaintiff must show: (1) a clear right to the relief sought; (2) that the defendants have a clear nondiscretionary duty to perform; and (3) that no other adequate remedy is available. *See Allied Chemical*, 449 U.S. at 35; *In re Stone*, 118 F.3d 1032, 1034 (5th Cir.1997).

Mandamus relief may only be obtained in extraordinary situations. *Allied Chemical Corp. v. Daiflon, Inc*., 449 U.S. 33, 34 (1980). Because it is an extraordinary remedy, "mandamus... [is] available only where government officials clearly have failed to perform nondiscretionary duties." *Dunn-McCampbell Royalty Interest, Inc. v. National Park Service*, 112 F.3d 1283, 1288 (5th Cir. 1997); *see also*, *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir.1992) (mandamus is appropriate "only when the plaintiff's claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt."). In this regard, "mandamus is not available to review the discretionary acts of officials." *Giddings*, 979 F.2d at 1108 (5th Cir. 1992) (citation omitted).

Venable seeks a writ of mandamus to compel Defendants to devise "ministerial policies and procedures" for their respective customs districts to ensure that notice of a liquidated damage penalty does not issue until the CBP completes a "constitutionally adequate prior investigation" into whether his clients have failed to timely pay customs duties or file entry documentation. Venable's claim for mandamus relief fails for several reasons. First, he cannot show that a "clear" duty is owed to him. As stated previously, it is his clients who are affected by the CBP's penalties and who

are owed a constitutionally adequate process. In this regard, Venable's claim for mandamus relief appears like a general grievance that this Court is without jurisdiction to review. *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000). Second, Venable has not shown (and cannot show) that the implementation of internal policies and procedures is a ministerial act of the CBP under the customs laws. If anything, the CBP's decision to implement (or not implement) internal practices and procedures when determining whether a liquidated damage penalty should issue is itself a discretionary decision that is committed entirely to agency discretion. *See Pension Benefit Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 654-55 (1990) (federal courts are precluded from requiring agencies to engage in any particular procedure when conducting informal adjudications since the Administrative Procedure Act contemplates that such decisions are left to agency discretion); *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 524 (1978). Third, Venable cannot show that there is no other adequate remedy available to his clients since presumably they can raise these claims once the CHB has instituted proceedings to collect liquidated damages. *Petrenko-Gunter v. Upchurch*, 2005 WL 1421402 *4 (N.D.Tex. 2005).

For these reasons, Venable cannot show any basis for mandamus relief, and his request for such relief will be denied.

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS**, **IN PART**, Defendant's Motion to Dismiss. The Court hereby enters the following rulings:

1. Plaintiff's request for a stay of his clients' administrative proceedings and any constitutional claims brought on their behalf are hereby **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

2. Plaintiff's Fifth Amendment due process and takings claims for alleged injury to his business reputation are hereby **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted.

3. Plaintiff's request for mandamus relief is hereby **DENIED**.

**IT IS SO ORDERED.**

**ENTERED: August 18, 2006**

*Jerry Buchmeyer*

_____
**JUDGE JERRY BUCHMEYER
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS**